UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

LEONARD GLIATTA,

                  Plaintiff,

v.                                            **DECISION AND ORDER**
                                                                        03-CV-214S

S. STEIN, M.D.,

                  Defendant.

      1.      In this action, Plaintiff Leonard Gliatta alleges that Defendant S. Stein, an orthopedic surgeon, replaced his hip with a defective artificial hip, which dislocated three times before it was surgically replaced. Plaintiff claims that in so doing, Defendant evinced deliberate indifference to Plaintiff's medical needs and violated his rights under the Eighth Amendment to the United States Constitution. Plaintiff seeks relief pursuant to 42 U.S.C. § 1983.

      2.      Plaintiff, acting *pro se*, commenced this action on March 19, 2003, by filing a Complaint and various motions in the United States District Court for the Western District of New York. On April 25, 2003, this Court granted Plaintiff's motion to proceed *in forma pauperis*, denied his motion for appointment of counsel, and dismissed his complaint with prejudice. On appeal, the Second Circuit Court of Appeals vacated the portion of this Court's Order dismissing Plaintiff's complaint with respect to Dr. Stein, and remanded the case to allow Plaintiff to amend his complaint so as to properly state an Eighth Amendment claim of deliberate indifference to his serious medical needs.[1] Accordingly, on February 10, 2004, this Court issued an Order granting Plaintiff leave to file an amended complaint

---

[1] In all other respects, Plaintiff's appeal was dismissed because it lacked an arguable basis in fact or law.

by March 8, 2004.  Plaintiff filed his first Amended Complaint on February 25, 2004.

3.     On April 19, 2004, Plaintiff filed a Second Amended Complaint naming as Defendants both Dr. Stein and Smith & Nephew, Inc., the manufacturer of the allegedly defective artificial hip device.  By Decision and Order entered on May 26, 2004, this Court: (1) declined to exercise supplemental jurisdiction over the Second Amended Complaint to the extent it could be construed to allege a state law medical malpractice claim against Dr. Stein; (2) dismissed all claims against Smith & Nephew, Inc., without prejudice; and (3) granted Plaintiff leave to file a third amended complaint setting forth a cognizable federal claim against Smith & Nephew, Inc., no later than June 8, 2004.  Plaintiff failed to file a third amended complaint as directed.  Accordingly, by Order entered on June 29, 2004, this Court dismissed all claims against Smith & Nephew, Inc. with prejudice, and directed service of the Summons and Second Amended Complaint upon Dr. Stein.  Dr. Stein filed an Answer to the Second Amended Complaint on November 9, 2004.

On December 12, 2005, Dr. Stein filed the instant Motion for Summary Judgment.[2]  By Order entered on December 22, 2005, Plaintiff was directed to submit his response by January 27, 2006, which he failed to do.  On April 12, 2006, this Court entered a second Order, directing Plaintiff to file his response by April 28, 2006, and notifying him that failure to file a response to Defendant's motion could result in dismissal of his case.  A review of

---

[2]In support of his Motion, Defendant filed a Statement of Undisputed Facts (Docket No. 29), a Declaration by Dr. Joseph T. Tan (Docket Nos. 30 (redacted) & 35 (unredacted)), a Memorandum of Law (Docket No. 31), a Reply Memorandum of Law (Docket No. 37), and a Declaration by Ann C. Williams (Docket No. 39).  Upon Defendant's Motion, Plaintiff's ambulatory health records, attached as Exhibit A to the Declaration of Dr. Joseph T. Tan, were filed under seal.  (Docket No. 35).  Plaintiff has not filed any opposition to Defendant's Motion.
      This Court notes that under this district's local rules, Plaintiff's failure to file a response to Defendant's motion constitutes an independent basis upon which to grant summary judgment.  See Local Rule 7.1(e).  Nonetheless, because Plaintiff is proceeding *pro se*, this Court will examine his case on the merits.

the docket reveals that Plaintiff has not filed any response to Defendant's Motion. This Court must therefore resolve Defendant's Motion without the benefit of Plaintiff's response. For the reasons stated below, Defendant's Motion for Summary Judgment is granted.

    4.    "When a party has moved for summary judgment on the basis of asserted facts supported as required by [Rule 56(e) of the Federal Rules of Civil Procedure] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party." Glazer v. Formica Corp., 964 F.2d 149, 154 (2d Cir. 1992). Here, despite having been given two extensions of time in which to file a response, Plaintiff has filed nothing in opposition to Defendant's Motion. Accordingly, this Court assumes the truth of the following facts, which Defendant has asserted and which are supported by the record. See Local Rule 56.1(c) (statements of undisputed fact that are not controverted by the non-moving party are deemed admitted); Cassidy v. Nicolo, No. 03-CV-6603, 2005 WL 3334523, at *2 (W.D.N.Y. Dec. 7, 2005) (deeming the facts asserted by the defendants admitted where the plaintiff failed to file a response); Johnson v. Kachelmeyer, No. 03-CV-356S, 2006 WL 625837, at *1 (W.D.N.Y. Mar. 9, 2006) (holding the same).

Plaintiff's medical records indicate that Plaintiff entered into the custody of the New York Department of Corrections ("DOCS") on or about January 12, 2000. (Def.'s State., ¶ 6).[3] Plaintiff's admission history indicates that at that time, he weighed approximately 230 lbs., was 5'8" tall, used a cane for walking, suffered from hypertension, diabetes, degenerative hip disease, obesity and neuropathy, and had undergone three back

---

[3] "Def.'s Statement" refers to Defendant's Statement of Undisputed Facts. (Docket No. 29).

surgeries and one prostate surgery. (Def.'s State., ¶ 6). Plaintiff was transferred to Collins Correctional Facility on or about February 22, 2000. (Def.'s State., ¶ 7). Plaintiff was diagnosed with degenerative joint disease during a radiology consultation at Brooks Memorial Hospital on or about February 24, 2000. (Def.'s State., ¶ 8). Thereafter, Plaintiff was referred to Dr. Stein, an orthopedic surgeon, who recommended that Plaintiff undergo a bilateral total hip replacement. (Def.'s State., ¶¶ 9, 10). In preparation for the surgery, Dr. Stein ordered x-rays of Plaintiff's lumbar spine and repeat x-rays of his left hip and femur. (Def.'s State., ¶¶ 9, 10). Dr. Stein explained to Plaintiff that because of his history of cardiac disease and smoking, he faced a substantially greater risk of fatality and complications from surgery. (Def.'s State., ¶ 10). Nonetheless, Plaintiff indicated that he wanted to proceed with the surgery. (Def.'s State., ¶ 10).

After a second radiology exam on July 14, 2000, and a second orthopedic exam by Dr. Stein on August 2, 2000, Plaintiff underwent total left hip replacement surgery at Wyoming County Community Hospital ("Wyoming Hospital") on November 6, 2000. (Def.'s State., ¶¶ 11-13). Dr. Tan, the Facility Health Services Director of the Medical Services Unit at Collins Correctional Facility, rendered post operative care to Plaintiff for several days. (Def.'s State., ¶¶ 14, 15; see also Decl. of Dr. Tan, ¶¶ 1, 13, 14). According to the Admission and Discharge Summary from Wyoming Hospital and the Infirmary Progress Reports from Collins Correctional, Plaintiff's surgery and recovery were uncomplicated. (Def.'s State., ¶ 15).

After several follow-up visits with Plaintiff following his left hip replacement, Dr. Stein scheduled the total right hip replacement surgery for May 7, 2001. (Def.'s State., ¶¶ 16, 18-21). Plaintiff was transferred to Wyoming Hospital for total right hip replacement

surgery on May 6, 2001. (Def.'s State., ¶ 21). Following surgery, Plaintiff was immediately discharged to Attica Infirmary, and then to Collins Correctional's general population on May 31, 2001. (Def.'s State., ¶¶ 22, 23). Plaintiff's surgery and recovery were described as "uncomplicated" and "unremarkable." (Def.'s State., ¶¶ 23-24).

On June 11, 2001, after complaining of severe pain in his right hip, Plaintiff was transported to Erie County Medical Center ("ECMC"), where he was diagnosed with a right hip dislocation and was immediately treated. (Def.'s State., ¶ 25). The following day, Plaintiff was transferred to Wyoming Hospital's emergency room for evaluation by Dr. Stein. (Def.'s State., ¶ 26). At that time, x-ray films of Plaintiff's pelvis and right hip showed that Plaintiff's prosthesis was no longer dislocated. (Def.'s State., ¶ 27). Dr. Stein confirmed that the prosthesis was not dislocated when he physically examined Plaintiff on June 12, 2001. (Def.'s State., ¶ 28). Dr. Stein ordered that Plaintiff wear a knee immobilizer at all times, except when bathing, and Plaintiff returned to Collins Correctional. (Def.'s State., ¶¶ 28, 29). Dr. Tan discharged Plaintiff from the infirmary to his cell on June 14, 2001, noting that he was "doing fine" after being treated by Dr. Stein. (Def.'s State., ¶ 29).

Dr. Stein examined Plaintiff during follow-up visits on July 25, 2001, and August 29, 2001, without incident. (Def.'s State., ¶¶ 31, 32). During an examination on October 24, 2001, Plaintiff complained that he felt a "shifting" of the right prosthesis, and Dr. Stein ordered a follow-up as needed, if Plaintiff became more uncomfortable. (Def.'s State., ¶ 33). Three days later, Plaintiff complained that his right hip "popped out," and was transported to Wyoming Hospital where an x-ray revealed that his right hip had, in fact, dislocated. (Def.'s State., ¶¶ 34-36). After putting Plaintiff under an anesthetic, another

doctor at Wyoming Hospital, Dr. Coniglio, reduced his right hip dislocation. (Def.'s State., ¶ 36). Plaintiff was discharged from Wyoming Hospital on October 29, 2001. (Def.'s State., ¶ 37). In Plaintiff's Discharge Orders, Dr. Stein noted Plaintiff's right hip dislocations were recurrent and advised that he should be rescheduled for revision surgery as soon as possible. (Def.'s State., ¶ 37).[4]

On November 6, 2001, Dr. Stein, assisted by Dr. Coniglio, performed Plaintiff's revision surgery, during which they replaced the "rasp" affixed to Plaintiff's femur with a different sized "rasp." (Def.'s State., ¶ 41). The replacement "rasp" was found to have an "excellent fit" with the femoral component and to be extremely stable in flexion, extension, internal rotation, and adduction. (Def.'s State., ¶ 41). Dr. Stein concluded that Plaintiff had tolerated the procedure well. (Def.'s State., ¶ 41). After being discharged from Wyoming Hospital on November 11, 2001, Plaintiff received post operative care and two months of physical therapy at Attica Infirmary. (Def.'s State., ¶¶ 42, 44). Plaintiff never reported any further complications with his right hip replacement after the Attica Infirmary discharged him to Collins Correctional on or about February 4, 2002. (Def.'s State., ¶¶ 45, 46).

5. Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is warranted where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A "genuine issue" exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477

---

[4] According to Plaintiff, his right hip dislocated on October 27, 2001. After he was treated at Wyoming Hospital and returned to Collins Correctional, the hip dislocated again during his 48 hour observation period in the facility's infirmary. Plaintiff claims he was then returned to Wyoming Hospital, where Dr. Stein informed him that the right artificial hip device would need to be replaced. (Pl.'s Compl., ¶ 7).

6

U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).  A fact is "material" if it "might affect the outcome of the suit under governing law."  Id.

In deciding a motion for summary judgment, the evidence and the inferences drawn from the evidence must be "viewed in the light most favorable to the party opposing the motion."  Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59, 90 S. Ct. 1598, 1609, 26 L. Ed. 2d 142 (1970).  "Only when reasonable minds could not differ as to the import of evidence is summary judgment proper."  Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).  The function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Anderson, 477 U.S. at 249.

Once a moving party has met its initial burden to demonstrate that no genuine issue as to any material fact exists, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).  Rather, the nonmovant "must come forward with evidence sufficient to allow a reasonable jury to find in [his or her] favor."  Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001) (internal citations omitted).  "Bald assertions or conjecture unsupported by evidence are insufficient to overcome a motion for summary judgment."  Zdziebloski v. Town of Greenbush, 336 F. Supp. 2d 194, 201 (N.D.N.Y. 2004) (citing Carey v. Crecenzi, 923 F.2d 18, 21 (2d Cir. 1991)).

Where a plaintiff is proceeding *pro se*, a court must read his submissions liberally, and interpret them to raise the strongest arguments that they suggest.  See Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 596, 30 L. Ed. 2d 652 (1972); Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994); Mikinberg v. Baltic S.S. Co., 988 F.2d 327, 330 (2d Cir.

7

1993).  At the same time, a plaintiff's *pro se* status "does not exempt [him or her] from compliance with relevant rules of procedural and substantive law." Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983) (internal quotations and citations omitted).

      6.      To establish an Eighth Amendment violation based on the deprivation of medical care to a prisoner, a plaintiff must demonstrate that the defendant acted with "deliberate indifference to a prisoner's serious illness or injury." Estelle v. Gamble, 429 U.S. 97, 105, 97 S. Ct. 285, 291, 50 L. Ed. 2d 251 (1976).  Conclusory allegations that a physician has been "negligent in diagnosing or treating a [plaintiff's] medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." Estelle, 429 U.S. at 106.  In other words, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." Id.

      The Second Circuit Court of Appeals employs a two-part test, with both an objective and subjective component, to determine if the alleged medical deprivation constitutes an Eighth Amendment violation. Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996); Rivera v. Senkowski, 62 F.3d 80, 84-85 (2d Cir. 1995).  Both prongs must be satisfied to find that a defendant has committed such a violation. Hathaway, 99 F.3d at 553.

      Objectively, the alleged deprivation must be "sufficiently serious," such that it creates "a condition of urgency, one that may produce death, degeneration, or extreme pain." Hemmings v. Gorczyk, 134 F.3d 104, 108 (2d Cir. 1998) (internal citations omitted). Subjectively, the charged official must act with a sufficiently culpable state of mind. Hathaway, 99 F.3d at 553 (internal quotations and citations omitted).  The United States Supreme Court has held that the subjective element of deliberate indifference "entails something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer v.

Brennan, 511 U.S. 825, 835, 114 S. Ct. 1970, 1978, 128 L. Ed. 2d 811 (1994). "The subjective element requires a state of mind that is the equivalent of criminal recklessness; namely, when the prison official knows of and disregards an excessive risk to [an inmate's] health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Hathaway, 99 F.3d at 553 (internal citations omitted).

This Court finds that the painful dislocation of Plaintiff's right hip prosthesis constitutes a serious medical condition, as required to establish a deliberate indifference claim under the Eighth Amendment. See, e.g., Hathaway v. Coughlin, 37 F.3d 63, 67 (2d Cir. 1994) (holding that the evidence supported a finding that the prisoner, who suffered from ongoing pain following his pre-incarceration hip surgery, had "serious medical needs"). The undisputed record in this case reflects that following his right hip replacement surgery, Plaintiff's prosthesis shifted and dislocated on two occasions, causing him great pain. Moreover, because the prosthesis dislocated, Plaintiff had to undergo treatment and reduction of the dislocation as well as corrective surgery to implant a new artificial hip device. Clearly, the dislocation of Plaintiff's artificial hip and the resulting pain was sufficiently serious "to create a condition of urgency." Hemmings, 134 F.3d at 108.

With respect to the subjective component of the deliberate indifference standard, however, this Court finds that there is no evidence that Dr. Stein knew of and disregarded an excessive risk to Plaintiff's health or his safety. The undisputed facts are that Dr. Stein: (1) diagnosed Plaintiff's degenerative disease and proposed that he undergo hip replacement surgery; (2) advised Plaintiff that he faced a substantial risk of death and complications if he underwent the surgery, given his medical history; (3) successfully performed Plaintiff's left hip replacement surgery and examined him several times post

operatively; (4) performed Plaintiff's right hip replacement surgery; (5) examined Plaintiff the day after he was first treated for a right hip dislocation to confirm that the hip was no longer dislocated and ordered that he use a knee immobilizer; (6) examined Plaintiff three more times before Plaintiff's second right hip dislocation, which was immediately reduced under anesthetic; and (7) successfully performed revision surgery and replaced the rasp with another, more stable rasp.

Under the circumstances, it cannot be said that Dr. Stein recklessly disregarded Plaintiff's medical needs, or refused to administer necessary treatment after Plaintiff's artificial hip became dislocated. Plaintiff's suggestion that the "defective" prosthesis should have been replaced earlier does not establish that Dr. Stein was deliberately indifferent to Plaintiff's serious medical needs. "It is well-established that mere disagreement over the proper treatment does not create a constitutional claim." Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998). "So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." Id. (citing Dean v. Coughlin, 804 F.2d 207, 215 (2d Cir. 1986)); see also Ross v. Kelly, 784 F. Supp. 35, 44-45 (W.D.N.Y. 1992) (acknowledging that "courts have repeatedly held that a prisoner does not have a right to the treatment of his choice"); see also Harris v. Murray, 761 F. Supp. 409, 414 (E.D.Va. 1990) (holding that "[i]t is not the function of this Court to second-guess the good faith medical judgment made by physicians or their staff concerning the medical treatment of inmates") (citing Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975)). Morever, a defendant's medical decisions, even negligent ones, do not amount to a unconstitutional deprivation unless he or she acts with the required mens rea. Estelle, 429 U.S. at 106. On the record before this Court, no

reasonable trier of fact could conclude that Dr. Stein disregarded any excessive risk to Plaintiff's health or safety.[5] Accordingly, Defendant's Motion for Summary Judgment must be granted.

      IT IS HEREBY ORDERED, that Defendant's Motion for Summary Judgment (Docket No. 28) is GRANTED.

      FURTHER, that the Clerk of the Court is directed to take the steps necessary to close this case.

      SO ORDERED.

Dated:     August 23, 2006
             Buffalo, New York

                                        /s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                        United States District Judge

---

[5]Because this Court finds that Plaintiff's alleged deprivation of medical care did not rise to the level of a constitutional violation, it need not reach Defendant's alternative qualified immunity argument.